

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-5-2008

# Rhasel v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-5165

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Rhasel v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1274.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1274

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 06-5165

NICKO RHASEL,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

Petition for Review of an Order of
the Board of Immigration Appeals
(Agency No. A96-203-328)
Immigration Judge: Charles M. Honeyman

Before: McKEE and RENDELL, <u>Circuit Judges</u>,
and TASHIMA, <u>Senior Circuit Judge</u>[*]

Submitted pursuant to Third Circuit LAR 34.1(a)
March 28, 2008

(Opinion filed: May 5, 2008)

OPINION

McKEE, <u>Circuit Judge</u>.

Nicko Rhasel petitions for review of an Order of the Board of Immigration

---

[*]The Honorable A. Wallace Tashima, Senior Circuit Judge, United States Court of
Appeals for the Ninth Circuit, sitting by designation.

Appeals which adopted and affirmed the decision of an Immigration Judge pretermitting as untimely his request for asylum and denying his applications for withholding of removal and relief under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition for review.

## I.

Because we write primarily for the parties who are familiar with this case, we need not repeat the historical or procedural background except insofar as may be helpful to our brief discussion.

Rhasel first argues that the IJ and the BIA erred in denying his claim for withholding of removal.[1] He contends that he established a "clear personal connection to the general persecution directed against Christians in Indonesia" by showing that he was robbed of his wallet, his motorbike was burned and his family's business was looted. Rhasel's Br. at 12-15. He further contends that these events constitute past persecution similar to that in *Surita v. INS*, 95 F.3d 814 (9th Cir. 1996), because it resulted in "severe economic deprivation that rose to the level of persecution." Rhasel's Br. at 16. In support thereof, he submits that the "loss of his motorbike meant that he no longer had transportation to travel to and from work and therefore his ability to retain employment

---

[1]Rhasel does not challenge the administrative findings that his asylum application was untimely filed and that he did not demonstrate extraordinary circumstances to excuse the late filing. Indeed, he cannot, because we lack jurisdiction to consider such a challenge. INA § 208(a)(3), 8 U.S.C. § 1158(a)(3); *Jarbough v. Attorney Gen.*, 483 F.3d 184, 188-90 (3d Cir. 2007).

suffered." *Id*. at 17. In addition, he submits that the looting of his family's business "which he likely would have inherited," and his parents inability to be employed thereafter, made them dependent on him. *Id*.

Rhasel's reliance on *Surita* is misplaced. At the outset, that decision is from the Court of Appeals for the Ninth Circuit and, therefore, does not control our analysis. Moreover, Rhasel's account of his mistreatment simply does not rise to the level of mistreatment in *Surita*. There, the petitioner presented evidence of multiple robberies, continuous specific threats of rape, murder and harm, threatening visits by soldiers, the inability to leave home to work or go to the temple, the lack of protection by the Fijian police, the occupation of the parental home by ethnic Fijians, and flight from Fiji of all but one of her eight siblings within a few weeks of being persecuted. Understandably, the court concluded that this mistreatment amounted to past persecution based on race. 95 F.3d at 820-21.

Here, Rhasel's account of a single incidence of robbery and the burning of his motorbike, without his suffering any injury, does not rise to the level of past persecution. *See, e.g., Lie v. Ashcroft*, 396 F.3d 530, 536 (3d Cir. 2005) (robberies motivated by ethnicity did not rise to the level of persecution because harm suffered was not sufficiently severe). Moreover, Rhasel remained in Indonesia for almost three years after the alleged mistreatment, and worked to support his family, before leaving. Furthermore, his parents and his only sibling continue to reside in Indonesia unharmed. *See Lie*, at 537

3

("We agree that when family members remain in the petitioner's native country without meeting harm, and there is no individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's [claim] of future persecution is diminished.") (citation omitted).

Rhasel attempts to rely on the International Religious Freedom Report and the United States Department of State Country Reports for Human Rights Practices for 2004 to support a fear of future persecution. In his view, these documents show that there is a continuous cycle of violence against Christians in Indonesia. In particular, he refers to instances of interreligious fighting in Sulawesi and the Moluccas. However, it is clear from the record that Rhasel lived and worked in Jakarta and had no significant contact with those areas. Moreover, the violence in those areas has decreased. The Religious Freedom Report noted that although Central Sulawesi and the Moluccas experienced interreligious and interethnic violence, the fighting did not escalate to the prolonged open warfare of the past. AR 133. Furthermore, when there was an upsurge in violence in the Moluccas in April 2004, the government moved to stop it by removing the police commander and sending more than 1,000 police and soldiers to the region. AR 134. The report also recorded instances of prompt police response to attacks on churches and the government's successful conviction of people involved in bombing churches. AR 123.

Rhasel also argues that *Sukwanputra v. Gonzales*, 434 F.3d 627, 637 n.10 (3d Cir. 2006), and *Lie v. Ashcroft*, *supra*, did not conclusively establish an absence of a pattern

4

or practice of persecution of Chinese and/or Christians in Indonesia. He relies on *Eduard v. Ashcroft*, 379 F.3d 182, 192 (5th Cir. 2004), in arguing that he has established is a pattern of persecution of Christians in Indonesia. We are not persuaded.

In *Sukwanputra* we explained that *Lie* was not conclusive on the issue of whether there was a pattern or practice of persecution of Chinese and/or Christians in Indonesia. We specifically noted that our decision was based on the two-year difference in the Country Reports and remanded the case for reconsideration in light of current Country Reports.

Here, the current Country Report indicated that Muslim and Christians were cooperating even in the most conflicted areas. AR 123-24. "Many Muslims and Christians . . . worked together to repair mosques and churches damaged in the past." AR 138. Likewise, the Religious Freedom Report stated that "[s]ome notable advances in interreligious tolerance and cooperation occurred during the period covered by this report. Government officials together with Muslims and Christian community leaders continued to work together to diffuse tensions in conflict areas. . . ." AR 124.

Accordingly, for all of the above reasons, we hold that the administrative agency did not err in holding that Rhasel failed to established eligibility for withholding of removal.

## III.

Rhasel's second argument in support of his petition for review is that the

administrative agency erred in finding that he was not eligible for CAT protection. The claim is totally meritless. Nothing here even suggests a likelihood of torture, and Rhasel's attempt to establish a claim under the CAT falls woefully short of the mark. He has not identified any evidence describing instances in the past where he was subjected to treatment so extreme that it constituted torture. *See* 8 C.F.R. § 1208.18(a)(2).

## IV.

For all of the above reasons, we will deny the petition for review.

_____